Could we call the first case, or the second case, please? 16-0097 Olive Portfolio Alpha, LLC v. 116 West Hubbard Street, LLC Could the attorneys presenting argument please approach and introduce yourselves to us for the record? Good morning. Andrew Jacobson on behalf of the appellant, 116 West Hubbard, LLC. Good morning. Adam Tuesley. I represent the plaintiff appellee, which is Olive Portfolio Alpha, LLC. Adam Tuesley, T-O-O-S-L-E-Y. Good morning, everyone. We are going to do our best to stick to 15 minutes aside. And Mr. Tuesley, you might want to reserve some time for rebuttal. I'm sorry, Mr. Jacobson. That would be fine. Okay, thank you very much. Whenever you're ready, gentlemen. May it please the Court, Appellant 116 West Hubbard, LLC is here today requesting that the Court reverse the December 2, 2015, order confirming sale in this mortgage foreclosure case. We're also requesting that the Court reverse the trial court's June 16, 2015, orders denying requests for 191B discovery, denying a motion for extension of time to file a response to the motion for summary judgment, and a suborder of the same date granting summary judgment against 116 Hubbard. And we also corollarily request the reversal of orders denying motions to reconsider as to the foregoing orders. I think I'd like to address first the December 2, 2015, order confirming sale that raises some issues with regard to a pending motion of withdrawal that was filed by Defendant's Counsel. Because I think it presents a question that, as far as I can tell, is almost a question of first impression. I think the law is pretty clear under Supreme Court rule that when an attorney withdraws, that the client is entitled to the 21-day period to secure the counsel, during which time nothing should happen that should prejudice the client. Doesn't the rule, though, talk about the notice that the withdrawing lawyer is supposed to give to his client? Yes, it does. Okay. It says that the withdrawing lawyer has to let his client know that you have 21 days to appear or let the court know that you're going to have another attorney so that you won't miss out on any of the proceedings. That's true. And that runs from the date of the withdrawal being granted. Well, I don't know about that. I know that's your interpretation of the rule. I don't recall that they're tied to that time frame. But when the sale was confirmed, counsel was there, right? Counsel was not given leave to withdraw until after the confirmation of sale. It is true that the court staged the order such that counsel's withdrawal was milliseconds after the confirmation of the order. However, counsel had presented a motion to the court more than a month earlier. Without notifying the very person or the corporation that needed to know that he was going to withdraw. He had mailed it. There was no proof of notice. Was there? The motion itself was filed on October 7th. Right. The counsel showed proof of mailing on October 8th to the client. Because the motion was heard on October 14th, the only issue was he had not yet received back a green card indicating receipt. So I don't think there's any dispute that the client received notice at some point. Did the client receive notice so that it would have appeared when the lawyer wanted to withdraw? No. Isn't that the whole point of the whole notice? Well, I think the point of the notice rule is to give them time to secure continued representation. And that's why it's 21 days after the granting of a motion to withdraw. And I think the issue we have here is that it's pretty clear that nothing should prejudice a client once its attorney has withdrawn. Oh. Right here. What is the prejudice here in the confirmation of the sale? Could you give us that? Sure. There are two things. One, there was a $3 million definitely judgment entered against the client at a time where we say the attorney was under essentially an ethical impairment and unable to protect the client's interest. Right. But how could the court – you need to tell me which one of the prongs the court should have looked at so as not to confirm the sale. Are you arguing somehow today that it was unconscionable? No. No, we were denied an opportunity to make that case. No, but you could have made it here. What are you arguing here is the prejudice, that the lawyer wasn't there or that the court shouldn't have confirmed the sale to the prejudice of your client, which is what? Unconscionability? It could be – there's nothing – I'll admit there's nothing in the record saying exactly on what basis would the client have resisted confirmation of sale. But there are several prongs. It could be lack of – failure of notice procedures. It could be bid price issues. It could be other – or justice was not otherwise there. But he was represented – the client was represented by counsel up until the moment the judicial sale was confirmed. Are you suggesting that the lawyer was no longer doing his job? That's correct. And – Would you just assume that? No. I think you can rely on the record completely. So what about the judge telling the lawyer who said there were irreconcilable differences? Okay. So the judge says the first time that he comes in and asks to withdraw, the judge – there's no evidence that he got the return. Correct. The judge says, I'm not going to let you withdraw. But if you happen to speak to your client, let them know that if they want someone else to come in and argue on the next date, that they have to be here and they have to file a written response to the motion to confirm. Otherwise, they will not be permitted to argue. Now, is there anything about that that prohibited the lawyer from doing his job and telling his client, this is the second time I'm moving to withdraw? No. I don't know if there's anything that prohibits him from telling them. I can tell you that I don't believe that's an adequate remedy under the Illinois Rules of Professional Conduct and the Supreme Court rules relating to withdrawal. The issue is, when a lawyer withdraws, nothing should happen to prejudice the client until they've had a fair opportunity to get continued representation. The only difference here is that the prejudice occurred during the pendency of the motion to withdraw, before it was granted or without it. When you filed a motion to reconsider, because you did come in, when you filed a motion to reconsider, what did you tell the court was the reason for not confirming the saying? Well, I would argue that we weren't permitted to do that at that stage because, as I think the panel is aware from even the prior case, the grounds for reconsideration are a change in the law, didn't happen, newly discovered facts, not an issue here because we didn't get an opportunity to put in any facts in the first instance, or a misapplication of the law. And that is what we argued, was that you misapplied the law by interpreting the withdrawal rule as allowing you to take a prejudicial action during the pendency of this motion to withdraw. I think Judge Ellis already pointed out that when the judge confirmed the sale, he had not allowed that attorney to withdraw. He didn't deny it either. No, he had not denied it, but therefore he had not granted it. And the rules provide that the court can control the withdrawal of an attorney. Can it not? I agree with that. If it wasn't the sale in this case, wasn't the sale postponed or requested to be postponed three times on an emergency basis? There were several motions. And during those emergency motions, wasn't it related to the court that the reason that they were asking to extend the period for the confirmation of the sale was because the parties were in negotiations to settle this case? I believe that's true. So wouldn't the judge have been within his full rights at that confirmation period to simply say this is a delay and I'm not going to allow you to withdraw? He would. And if he believed that, he should have. He did not do that. Nor did the other side object. Aren't you really expecting us to go into the mind of the judge now? No. When it was obvious that the case had been continued for the confirmation of sale multiple times and the reasons that were given never even came to fruition? I don't think there's any need to get in the judge's mind because he sort of took the record establishes what was going on. An attorney steps up and says, I have an irreconcilable difference with my client and reports to the judge that I believe I am ethically prohibited, quote, from filing a response to this motion to confirm sale. What would prohibit that lawyer? What would? No. Here's the question. What would prohibit that lawyer from letting his client know that this is the second time that we're going to move to withdraw because of these irreconcilable differences? So you need to have someone there. What's prohibited the lawyer from doing that? Nothing prohibited the lawyer to do that. But if you accept that the basis of the withdrawal is irreconcilable differences, which relies on Rule 1.6 that says the representation has been rendered unreasonably difficult by the client or perhaps they're not. Wasn't that what happened to you the January before? Wasn't your firm the actual firm that started out these proceedings? Yes. And didn't you withdraw in January of 2015? We did. And weren't the grounds irreconcilable differences with this particular client? Yes, they were. Okay. But the point is you have an attorney standing before the court saying, I feel I'm ethically prohibited from filing a response to this motion. That's fine. We accept that. Right. But then while that's still pending and he's under that ethical disability, what the judge does is enter an order based on that attorney's failure to act to the prejudice of my client. But that's not why he didn't deny. That's not why he didn't allow it the first time. And it has nothing to do with his permitting withdrawal after he entered an order confirming the sale. I don't see how the two can be separated just by a millisecond in time. If this has happened in the reverse order and he said, here we are in court today and I'm granting both the motion to withdraw and the motion to confirm sale, there would be no doubt that my client should have been entitled to 21 days to get new counsel. I mean, you cite one case. Well, I agree that there is. But you're still not able to tell us what is the prejudice. But if we had presented an argument to the court on reconsideration saying, and here are the grounds to not confirm the sale, that would have been an improper reconsideration argument. No, that's true. That's right. But what Justice McBride is getting at, and I think I'm getting at as well, is tell us now what would have happened had this gone the way you wanted it to. Had the judge said, okay, you want to withdraw. He's about to bang the gavel on the motion to confirm judicial sale and say, you know what, I'm not going to do that. I'm going to do what counsel is telling me I should do. I'm going to give you 21 days to get a new lawyer. He goes, he gets a new lawyer. That lawyer would have come in and said what? They would have filed an objection. And said what? Well, there's nothing in the record that they could have said. I know. What could they have done? You're in a pretty bad spot when you're at the point of confirming the judicial sale, right? You lost a lot of your defenses. Most of the case is over. What would have made the difference here? Well, first of all, one thing that we did say was that you erred in denying us an opportunity to respond to summary judgment. So you erred in the application of the law relating to summary judgment. That's a separate issue. Well, not entirely. Is there prejudice or not? You have to establish prejudice within that 21-day period. You do. And what is your prejudice? Our prejudice is that we have a $3 million deficiency judgment. But you do explain to me which part of the confirmation of sale the court shall confirm unless. Which one is it? Justice not otherwise being done. You didn't argue that in your appeal, and your appeal is in front of us. And one of the issues is this very issue about prejudice. So you haven't argued that justice was not otherwise done. And, you know, that's a very, very, very discreet prong. There was no opportunity to argue it. We were told we couldn't. I'm not giving you time to file a brief. What could the client have done at that point? They could have jumped the gun and gotten a lawyer. Because the plaintiff filed a motion for summary judgment on March 2015, correct? Correct. And the defendant was given 40 days to respond and did not do so, correct? Instead, he filed a motion to extend time and a motion for discovery, right? There was discovery going on. So why are you saying he was never given an opportunity when he clearly was given an opportunity to respond? My reference to not giving an opportunity to respond was to the motion to confirm sale. You're right, there was a briefing schedule. You're right, there was a briefing schedule on the motion for summary judgment. And at the time, discovery was ongoing. And even at presentment of the motion for summary judgment, there was discussion about the fact that we might need discovery. And the court said there's a Rule 191B way by which you get discovery. Mr. Jacobson, I think that we could move on to the summary judgment, and I'll tell you why. Because I think if you're right, that the court should have granted discovery and that there was a reason, questions of material fact that were raised based on your briefs now. Then I think you have a valid argument that would help you prevail, all right? So let's talk about, as Justice Burke said, you're given, not you. Now, this isn't really about whether another law firm did a bad job. That's kind of a different issue. I agree with that. So when the judge said 40 days, this other firm basically didn't do anything, did they? Yes, they were in the midst of discovery. They served discovery. They got documents from the other side. They got responses from the other side. They gave inconsistent responses to what they said in summary judgment. For example, with regard to the issue of whether the representative or the summary judgment affidavit was employed by Olive Portfolio or was employed by Sabal, the servicer, they gave conflicting answers. In the introductory answers, they said one thing and then another. Well, let's talk about Sabal. Does Sabal really have anything to do with the mortgage foreclosure action? Are you citing any cases that say that a loan servicer somehow, I mean, I'm not sure I understand what difference it makes that there were inconsistencies about the loan servicer? Well, first, they denied that there was a loan servicing agreement in the first instance and then disclosed it at summary judgment that there was one, and that was a topic on which we sought discovery and didn't get it. But the issue of Sabal really goes to the issue of whether or not the plaintiff needed to be registered to do business in Illinois. All right. Let's talk about that. Is there a single case that you cite in your brief that says that the mortgagee who's licensed in a different state to do business can't file a complaint for a mortgage in Illinois? No. If that's the only one going on, that's correct. But isn't that what your affirmative defense was? No. The difference is that if that person was conducting business generally in the state of Illinois, they had to register in order to be able to bring this action. What case do you cite? I mean, is there a single case that talks about mortgage companies that are incorporated in other states that have to become a – they have to – what is it? Register? That's correct. Yeah. What mortgage case could you possibly show us? I'm not aware of any. Well, I can cite the statute, 805. Other than the statute, wouldn't there be cases interpreting this premise that you've made, this theory? I mean, how many foreclosures have we had in Illinois in the last 10 years? Most of those corporations were registered in other states. They were never required to register to do business because of the commerce clause. Isn't that correct? It is true that if all they were doing was engaging in interstate commerce and enforcing this one mortgage in Illinois, that's correct. If they're engaged in the business – in transacting business regularly in Illinois, they needed to register. And that was the question that we were trying to get to. And that's where Saval made a difference because they're an agent. If they were doing other things in Illinois on behalf of Olive Alpha, it could raise – rise to the level of regularly transacting business in Illinois, such that they were required to register. Why wouldn't – why wouldn't covers been able to do that from the get-go? So Olive Portfolio is the plaintiff in this case. So what's prohibited – not necessarily you, but we'll say – because the – you got out in January of 2015. What prohibited anyone from seeking discovery that Olive Portfolio was a foreign corporation doing regular business in the state other than this mortgage complaint that it filed? Well, they, in fact, did serve discovery about what Olive's servicing arrangement was with Saval and what they were doing in Illinois. And the response was there is no servicing arrangement and that Mr. Calder is an employee of Olive Portfolio. But aren't you – I'm not sure I understand. I don't have any cases that you've cited that would suggest that Saval – does that have their name? The servicing agent – that a servicing agent has anything to do with whether or not Olive could file a complaint for foreclosure other than this statute you've referenced. But are there cases from other states that suggest this? The states that, you know, allow judicial foreclosures? I think that the – I haven't seen the issue come up in the context of – under state commerce exception, engage in this one case relating to its mortgage held here. And that company also was regularly conducting business in Illinois such as it's required to register under the statute in order to bring in action. There's no case that says that exempts them from the requirement to register either. Would you say this is a question of law? With respect to this issue, I would say yes, it is. Except for the fact of what Saval was doing in Illinois for Olive, such that whether or not their activities were sufficient to be imputed to Olive as being someone who was regularly conducting business in Illinois. That would be the factual component of that question. But the judge said that – didn't the judge say that these weren't factual questions? Or is that what your opponent is arguing? I don't recall – I don't have anything indicating – Well, your opponent says that really you've raised issues of law. They say that in their motion for summary judgment they resolved your two affirmative defenses. And again, you weren't the lawyer. Your firm was not representing Hubbard at the time of the summary judgment motion. And then we also have a second question, I think, that goes to the merits of the summary judgment, which is the issue that in order to be a holder entitled to enforce an instrument in Illinois of a transferred note, you have to be able to show either an endorsement on the face of the note or an allege affixed to the note. So you're saying that their allegation that it was paper clipped and that's why there's no binder holes or staple marks or anything, you're saying that's insufficient, correct? I'm saying – That there has to be some showing of affixation which is more permanent than a paper clip. Well, there is no Illinois law saying that paper clip is enough. They rely on a single unreported Connecticut case. And there's conflicting evidence as to whether it was ever paper clipped. What is the conflicting evidence? There's the affidavit of the prior counsel who conducted a physical inspection of the original loan documents, and it's in his 191B affidavit where he indicates that the document wasn't affixed in any way and didn't bear any marks of having a clip on it. Isn't there evidence in the record that when the first motion to dismiss was filed that it was stated that the allenge, the second one, was paper clipped? No, there is not. When the first motion was filed, to dismiss was filed, one of the allenges wasn't even attached to the complaint, which makes you wonder if it was so firmly affixed when it wasn't when they filed the complaint. And, indeed, the motion to dismiss was granted on that ground. Yes. Well, subsequently – But didn't the judge indicate in open court both allenges were present? In fact, the second allenge says that it's attached, this is made a part of and attached to the previous allenge. Correct? The documents were displayed in open court. All right. And then the plaintiff filed an amended complaint, okay, and then there was no motion to dismiss subsequent saying that the – that Olive Alpha was not the holder. No, there was an affirmative defense, which is the way you raise standing to enforce the holder. Yes, and in their motion, in their summary judgment motion, they indicate that the allenge was affixed by way of a paper clip. Do they not? They say that, yes. But we said that it wasn't. Well, how can you say that it wasn't? There's a counter-academic. Didn't Judge Otto make a finding of fact that it was attached by a paper clip? No, and the allenge was presented to the court in open court on September 22, 2014. The order specifically says that, unlike the 2012 vote, the July 25, 2013 allenge does not have binder holes at the top and neither allenge has staple holes or marks. Oh, is this the attorney's affidavit? There is an attorney's affidavit. Who says it wasn't? Who says it wasn't paper clipped? Two places. Two places, which is one on when it was exhibited in open court on September 22, 2014, there was an order, and that order says that the July 25, 2013 allenge does not have binder holes at the top and neither allenge has staple holes or marks. Right. Which is presumably a case under review. That means that there's no marks or holes, but it doesn't mean it wasn't paper clipped. But there is no finding that it was either. No. Then why would the judge have accepted the documents? Because the judge had not yet been confined with the question under the uniform commercial code of whether or not this allenge is sufficiently affixed within the meaning of the commercial code. Let me help you with the procedural part. So you file a motion to dismiss saying the allenge isn't attached. The judge says you're right, it's not. Granted, leave to replete, I'm sure. And then what? Then they come back. Does time pass or does this all happen kind of at the same hearing? Not too much time passes. Okay. And then they come back and they say here's the allenge, Your Honor. That's correct. And what hearing did the judge make this factual finding that the July 25th allenge does not have binder holes at the top and neither allenge has staple holes or marks? Is that when he first grants the motion to dismiss? I think that's right. It was on September 22nd. No, that's when the amended complaint is filed. September 14th, I believe, is the hearing. I think that Judge Ellis has recalled the facts. So in any event. Okay. So then the plaintiff comes back, amends the complaint, attaches the allenge. I don't want to say words like attach, but the allenge was included in the complaint, and the judge said we're good? The judge wasn't asked for where it was. Did you move to dismiss again? No, we raised it in a form of defense. We're conflating two issues. One is in the first complaint the allenge wasn't even included in the exhibit anywhere. Right. The second issue is whether or not for purposes of a holder under the UCC the allenge is affixed to the note. Right. Just filing a new complaint and sticking the allenge in your exhibits doesn't answer the question one way or another of whether it's sufficiently affixed. That wouldn't have been a basis for a 2619 or a 2615? Generally, because it's an issue of whether they're a holder entitled to enforce, that's a standing question to be raised by affirmative defense. It would not be an appropriate 2615. Okay, and you're saying that issue was then never resolved. That's correct, because it was raised by us. For example, at summary judgment, there's an issue with respect to how you treat the affidavit submitted at summary judgment. We would argue that there are two things. One, it's a 191B affidavit for more discovery. Sure. But the law also allows that any time prior to or at the hearing you can submit counter affidavits. So the affidavit of the lawyer, which wasn't just the 191B affidavit, it wasn't a legal argument, but said, I went and physically inspected, and it wasn't affixed, is a counter affidavit within the meaning of the rule. And even if the judge wasn't going to grant 191B discovery, whether because he thought it was for delay or whatever the reasons were, although I would contend that wasn't the issue, it was sufficiently affixed. So you're saying that a lawyer's affidavit now can be used, the actual lawyer representing the parties can use his own affidavit to support the denial of a motion, a summary judgment motion? Absolutely. No, a party can, a lawyer can't. If the lawyer is the person, a lawyer can be a witness, and this gets into the issues of lawyers being a witness, but on sort of a ministerial issue without creating a conflict issue or whatever. Did the lawyer say there was no paperclip? Yes. Okay, where is his affidavit in the record? His affidavit is in our appendix at A88. 88? Uh-huh. And this is not the 191? It is, it's the same affidavit. Oh, okay, because you know under 191, a lawyer cannot file an affidavit. There's numerous cases that say that. I understand. Our contention is that it should be considered a substantive counteraffidavit under the summary judgment statute that allows for counteraffidavits to be filed. He was the fact witness in essence because he was the one who went and inspected the document. And so he tested, so their requirements would be is he competent to testify, does he have personal knowledge, does he have a foundation to say. Don't the cases also say, though, that that witness has to comply with Supreme Court Rule 191, any witness for an affidavit on any summary judgment? Agreed. We contend that he did. Okay, but. There's no deficiency in this affidavit. Well, there is because Supreme Court Rule 191 does not allow attorneys to file affidavits on behalf of parties, either in support of a summary judgment motion or in support of this request for further discovery. I mean, the cases are numerous that lawyers cannot file these affidavits to support. I don't think the law is clear on that. I think with respect to a Rule 191B request for discovery, you do have to have an affidavit from the client, which we did, saying here's information we can't get, here's what it would be, here's what we think the testimony would be. And our client representative said all those things and even said, I have reason to believe if the person has identified our question, they'll confirm the original allonge was never affixed to the note and said we need to do this discovery. But on a ministerial issue as to an attorney about something that happened in the course of the proceedings, I don't believe there is a bar against an attorney saying I was in court this day when they exhibited the notes or I went over, for example, suppose there was an issue about whether a document had never been produced in the course of litigation. And it's not the case that you would say an attorney can't put in an affidavit that says I went to opposing counsel's office, I reviewed all those documents, and this document wasn't among them. This isn't any different. All he's saying is I went to opposing counsel's office, I reviewed these documents, and they were not affixed in any way. So he's a ministerial fact witness that can be considered at summary judgment. And when the question is, is it affixed within the purposes of the Uniform Commercial Code, that testimony was relevant. Notwithstanding the fact that they addressed it in a not 191B motion, it is still a counter affidavit that was in the record to be considered and it met the requirements of 191. So long as, I mean, you've already, I mean, the cases say that the affidavits supplied in support of a motion for summary judgment have to meet Supreme Court Rule 191. Agreed. And in reference to the cases I was talking about, Brighton v. Golden Rule Insurance, finding that an affidavit was signed by an attorney is deficient for purposes of Rule 191. There's another case, Genoble, the finding of an affidavit under Rule 191 to be fatally defective in part because it was signed by an attorney, not a party. There's other cases. There's Wynn v. Loyola. Lawyers can't sign affidavits under 191 and then use them either for purposes of summary judgment or, as you're arguing, as a counter affidavit that can be used in this particular instance. I mean, but I understand your position. You're saying it was a counter affidavit. It should be considered by the court. Yes, and I don't believe there's a bar on him testifying to something that happened in the course of the proceeding to which he's the only witness. There would be no other way to introduce that information unless you gave us the discovery that the defendant had requested in the case in the first instance. And I think, you know, in that respect, I think the Coasterman case is probably the most on point where someone raised this defense of standing and the court found that the decision not to let defendants pursue any claim for lack of standing beyond the pleading stage was an error of law. The more problematic issue with striking the offender of defenses, ours was still in existence at the pleading stage, was that the judge then prevented defendants from taking any discovery on possible defenses or getting a clear demonstration of earnest right to enforce the instrument. Was the attorney's name Bardia? Yes. Bard, okay. Yes. Because in the affidavit, it says that the first allonge had two distinct hole punches in the top margin frequently used to affix papers together with a metal shaft. That's correct. Okay. The foregoing hole punches were centered on each page and they lined up with the hole puncher on the note. So that's basically saying that it was attached by way of hole punches, correct? We are not challenging whether the first allonge was attached. Okay. So here's the second. The second allonge was comprised of one page. Unlike the note and the first allonge, the second allonge did not contain any penetration marks resulting from staples, hole punches, or other penetrating marks physically altering the document. Okay? Furthermore, the second allonge was not affixed, attached, or otherwise appended to the note. I just want to clarify. Are you saying that this lawyer is saying that it wasn't paper clipped? I believe that's the only way to read that. That's the only way to read it was not affixed, attached, or otherwise appended to the note? If it was paper clipped, how could it not be attached? Okay. Well, my question is that, you know, there's two lines of cases. The commercial code has been modified. There's a line of cases that say even a paper clip staple could be a fixation. So I'm just saying, you said the lawyer said there was no paper clip, nothing. But that's not what he said. He said it wasn't affixed, attached, or otherwise appended. He doesn't say there was no paper clip. I think he would interpret it as a mere conclusion when he says it wasn't affixed, attached, or otherwise. Because in the past, the interpretation of the code was such that it had to be firmly, what was the word? There was a word that was removed. Affixed, yeah. Yeah. Oh, firmly. Yeah, firmly. Okay. All right. And with respect to paper clips, the only case that's touched on that is an unreported Connecticut case. And indeed, in Illinois, it's been acknowledged that there is no case law establishing what these things are. Right. It's a case of first impression as to whether or not paper clip could suffice. Number one. Right. And number two, whether there's a question of fact about whether there was such a. . . All right. I think that's probably my time for this portion, but. . . Let's just say so. All right, Mr. Jacobson. We'll see you again in a minute. Okay. Mr. Tuesley? Did I say your name correctly? You did. Thank you. Mr. Tuesley, you better tell us about the paper clip. I know. The. . . May I please declare? I'll start out by saying that. But there are a few things that I just want to make sure that are clear on the record from what was actually just talked about, including the paper clip. First is that there are two separate Allonges here. And so this was originally a loan that was a Harris loan, changed the name to BMO. They transferred out of portfolio, and then it was transferred out of portfolio alpha, who was the name plaintiff in the case. And I believe the issue is that there isn't a question of fact at all that's ever been raised with regards to that. So this legal argument that we're talking about now, about whether or not there was appropriate standing, is something that absolutely could have been raised in response to the summary judgment. What was raised here was a 191B affidavit, not a response. So we continue to hear about Mr. Fard's testimony in his affidavit. That was only in conjunction with a motion to extend the time to respond to the motion for summary judgment. That is not an official response to the motion. At the time in which Judge Otto made these determinations, we went through all of the reasons why the 191B affidavit and motion should have been rejected by the court. And one of those was specifically these are legal arguments that absolutely could have been raised in a response. Nothing precluded 116 West Hubbard from responding to the motion for summary judgment and participating in an actual hearing on these legal affirmative defenses as to standing and failing to register. And so, again, there wasn't anything that was going to come from this additional discovery being sought by way of the depositions that were going to change anything. We agreed. We agreed that there was not a staple with the Lassa Lodge. We agreed that our portfolio, Alpha, did not register to do business in Illinois. So these are, again, straight legal arguments. This Court is very aware of the fact that... But the paperclip issue is before us. The paperclip issue is absolutely before you. It's a legal argument again. There was never a response to the motion for summary judgment on that issue. Where is the evidence that it was paperclipped? Well, in a lot of different cases. It was part of the affidavit. I physically brought in the allonge. And regardless of this legal conclusion of a fixing, there's, again, falling back on the fact that Hubbard has taken the position that a fixing doesn't include paperclips. I was the one who actually brought the note and the two allonges into a physical meeting in my office with Mr. Farrad. They were attached. I still have the original note and both allonges sitting in my office currently. How were they attached? By paperclip. And so that's how I received them. That's how I showed them to Judge Ido. That's how I showed them to Mr. Farrad in my office. It's my belief that under the UCC, as we briefly discussed now, there are two separate methods in which a document attached to a note is considered to be part of a note. But is there any proof in the record, not that we don't believe what you're saying, of course, but in the trial court, is there a record of a paperclip? It's in the actual affidavit of Mr. Calder in support of the motion for summary judgment. Oh, it is? It is. That helps out a lot. What happened was is the way that this works is that – You filed an affidavit with the motion for summary judgment. I did. And Mr. Calder – Because it had been raised previously. And when we brought in the note and the original note and the original alonges, it was part of a motion for protective order because the counsel for Hubbard had actually requested that I physically held on to these documents throughout the course of the pendency of the case, of which I didn't want to do. I can't imagine. I wanted to send them back. And so in order to circumvent that, I had brought in the originals so that we would actually kind of take this issue out of the equation because I believe there are a significant number of cases that proof of possession of the note is enough to get you past that standing. And so I was trying to do everything I could to take this affirmative defense out as early as possible. But didn't the statute – wasn't it modified slightly regarding these alonges? The issue is that there's two different versions of the UCC. Our statute wasn't changed. There's certain states that require permanent affixion of the actual instrument, and then there's other states that just say affixed. Doesn't our Mortgage Foreclosure Act have a specific provision relating to the affixation of an allonge or not? No, the Mortgage Foreclosure Statute and the Supreme Court rules discuss the fact that you do have to attach those to your initial pleading so that you can actually – So that's what the original motion to dismiss said, was you're missing an allonge in that chain, so we did agree to amend it to make sure that we complied with the actual Supreme Court rules. So you're saying there's not a single case that suggests that based on any change that all you have to do is have the documents attached to the complaint. Correct. Because there was a New Hampshire case, I believe, that I cited in which they used the exact same version of the UCC that Illinois does. Yes. And then since then there's been other cases. Florida's come out and said you can actually electronically attach documents and they still constitute an affix. What about the language in the allonge that says that the second allonge is attached and made a part here. Is that language sufficient? I always thought it was. I mean, I thought that this was kind of an unnecessary argument because it's not – we're talking about standing. All of these arguments, we're missing the point that all we're focusing here is on standing. This is a very, very large amount of money at issue. No one's ever saying that some other party is seeking to collect on the note. I mean, no one has ever – The burden is on – The initial burden is on me once I show the original note. It shifts to the defendant under Illinois law. So we met our initial burden of standing both in our original pleading and in the affidavit used in the summary judgment motion. If they believed that was insufficient, what they were required to do, especially under Judge Ido's briefing schedule order, was to file a response to the motion and participate in the hearing. Let me go back to that. So you file a motion for summary judgment. I did. And you have an affidavit from someone named Mr. Calder? Yes, John Calder. Who's that? John Calder is an employee of Sabal Financial, which is the servicer for the loan. The loan servicer. Okay. So you file an affidavit that includes probably a lot of information, but it includes that the Allonge was paperclipped. Correct. And then you file that. It's up to the other side to respond. They don't respond to the motion for summary judgment. Substantively, they file a request for discovery. Correct. For additional delay for the purpose of discovery. And in that motion, they have an affidavit from counsel who says, well, I guess we can argue about it, but would you raise ostensibly trying to dispute the fact that it was paperclipped? No. I always took it, even at the argument with the judge, that it was his version of a fixing, that it was not stapled or, you know, glued or some other manner of permanent affix. Well, regardless of what he said, did he join the issue? No. Because the judge at that point, you know, he went through all of these. He found it to be futile, because at that point he didn't think it was going to raise the point of an actual material question of fact, even if what he said was true, because this is a legal issue that he could have raised in response to the motion for summary judgment and chose not to. So additional depositions on the issue wouldn't have mattered, and we also raised that exact issue that an attorney affidavit can't be used as a 191B affidavit. And that procedural technicalities aside, he was sort of raising it in response to summary judgment, wasn't he? Yes. Yes and no, I guess. I mean, if you look at it, and the issue is that, obviously, he was granted 40 days, as we discussed, and it was the 40th day that they filed for a motion for an extension of time. They received an extended. We answered that in 24 hours. They issued discovery the day before the presentment of the motion. And they answered two sets of discovery, which they did ask about all of these issues with regards to the other. I'm just saying, he may not have filed a document that sent a response in opposition to motion for summary judgment. Correct. But he did file a document within the time period that included an affidavit that appears to contest your claim. Correct. That there was a paper flip. Correct. I don't disagree with if you look at it that way. It was vague and ambiguous as to what constituted a fiction. He never came right out and said there was no paper flip. No, but as late, I should say, as early as September 22nd, 2014. Correct. When the alliances were presented in open court. Correct. The Hubbard Company was aware that if they wanted to challenge this, they had knowledge to do so. And yet during the 40 days that they were given time to respond to the motion for summary judgment, and which is about six months or more later than they asked to have time to respond to the motion. Correct. Instead of responding to the motion and saying there's a question of fact that the holder of the allonge is actually not the holder. Correct. And as I said, nothing was done in that period of time to actually ever ask for a deposition or do discovery. It wasn't until this came out, and as you see, it was the day before a presentment of motion that I got the discovery. I answered it in 24 hours, verified, produced documents. Then again, they waited for the full 40 days set aside for their briefing schedule to then ask for another extension of time. So it does go back to the bigger issue of delay. It's a large case, as I said, and unfortunately the foreclosure call in the Supreme Court of Cook County does take a long time. And in this situation, we were prejudiced. The judge understood that with the taxes being redeemed for $900,000. So the damage that was accruing consistently both to my client and to the defendant as it pertains to a deficiency judgment was another thing that the judge took into account as to all of these things because the loan had matured. This was not a situation. It was a pretty straightforward case in which, you know, there was we never claimed the principal amount was any different than it was from the first day, things like that. They never said they had made payments. They didn't get credit for it. All the typical, normal, factual issues that you may see raised in a situation like this. All we saw was this state bill to be a launch issue and the failure to register out of portfolio alpha in Illinois were the only two true defenses that were raised in this case from the very beginning. And so I think… Can you comment on that issue? Sure, absolutely. It's a small issue. This is another thing that there is not a direct Illinois case, state court case on point on this issue. The Business Corporations Act is specifically on point saying that if you conduct interstate commerce, you don't have to register to do business in Illinois. The LLC Act does not have that exact same provision. I acknowledge that. However, in our situation, the same reasoning applies to an LLC Act that conducts interstate commerce that they should not have to register to do business in Illinois. And, you know, there was actually a federal case that came out after the appeal was filed that held that exact thing in the Northern District of Illinois. Did you move to cite additional authority? It's in my brief. Okay. It's in my response brief. All right. And it specifically said… Well, what if we disagreed with that interpretation and said you do have to be registered in Illinois? What does that do to your case? That was always another issue that I had was their claim was that they made everything void ab initio, but there's a series of cases, and we didn't really get into this in the brief, that says that's a fixable thing. You just register. So, you know, we would go back, I guess, we would register, and then that would be taken out of the entire equation. Well, why would the court have lost jurisdiction? Why would it even be void ab initio? I never understood that argument. Well, I mean, you know, talking about jurisdiction of the court, the complaint, this really hasn't come up, but… No, I mean, I guess in that issue, I don't know exactly what it would be. It's not as if the plaintiff would be forgiven of $8 million for this kind of offense, I mean, if somehow this was particular to be an issue. I mean, is your opponent, are they trying this to standing? They're trying this to legal standing. Isn't that where this argument comes in? Absolutely. They're suggesting the loan servicer's lack. This is the loan servicer. It's not the holder of the note, right? It was originally the holder of the note. It became the loan servicer argument towards the summary judgment stage as to the relationship between the loan servicer and Olive Portfolio Alpha. But at all relevant times, your suball did not hold the note. No, never. Right. So we've got a situation where the holder of the note is the plaintiff in the case. Correct. But then we have a loan servicer who might not be registered. Let's just say hypothetically they're not registered. And neither are they. Neither the servicer nor the plaintiff. They're registered. I see. Okay. But there's no case authority that suggests that a servicer of a loan It has anything to do with the actual plaintiff in this case. Correct. Well, why the holder of the note? There is no case authority that requires them to be registered. Absolutely not. And we set it to case law on the doctrine of imputation as it pertains to agency anyway. And it's one of those things in which if you are an agent for a particular party, all of your actions outside of what you did for that party are irrelevant as it pertains to whether or not the agent's actions can be imputed to the principal. You know, from an attorney's standpoint, I may represent 50 other clients. That doesn't mean my actions in relation to my working for those other 50 clients are imputed to that one other agent. So they needed to focus their energy solely on this particular issue. And they'd never get around the fact that this entity holds loans in nine different states as identified in the actual affidavit and in the pleading that shows this issue of interstate commerce and the Commerce Clause that doesn't require us to register. So, I mean, I don't – we didn't really talk about the issue of the withdrawal. And so I don't know how much you – I mean, I think the briefs kind of went through that and you guys all asked great questions about that particular issue on the withdrawal. I think we can stop here. Okay. Thank you, Mr. Toosman. Thank you very much. And I want to then – obviously, we would like, Your Honor, the panel to sustain Judge Otto's decisions. Thank you. Thank you very much. Okay, Mr. Jacobson. I'll be brief, but I do want to address sort of where we are on the lay of the land of this Sabal and Olive Portfolio issue. The issue that we're talking about is whether Olive Portfolio, the plaintiff, needs to be registered. There isn't an issue about whether Sabal needs to be registered or not. We're not contending that there's an issue with respect to that. The issue is Sabal is indisputably Olive's agent, and the actions of an agent on behalf of that principal in Illinois could be imputed to the plaintiff for purposes of determining whether or not they were conducting business in Illinois. Not actions for Sabal on behalf of other people, like an attorney for multiple clients, but this is a portfolio of loans in which there is record evidence that there's multiple loans owned by this plaintiff and that Sabal is the servicer. If Sabal is regularly engaging in business in Illinois on behalf of its principal as an agent, then that's imputed to the principal and Olive needs to register. As counsel acknowledges... So is there a case anywhere in the United States right now, in light of this enormous amount of precedent we have regarding foreclosures, that you found that in any way suggests that an agent's actions in one state can be implied to the principal so that the principal who holds the note cannot present a complaint for foreclosure in that state? I haven't found one on all floors with that situation, but the exemption that they're talking about with respect to interstate commerce is something that appears in the Business Corporation Act, which doesn't apply to this plaintiff, which is an LLC. And there is no corresponding provision in the LLC Act for the Business Corporation Act relating to the issue of needing to register. So you could say that you've got one body of law relating to the Corporation Act, they have a different body of law regarding the LLC, and they apparently, with full knowledge that it was in the Business Corporation Act, did not give the same exemption in the LLC Act. Did you agree with counsel's claim that once you have the mortgage and the allonge and then the second allonge attached, that as a holder you haven't presented any question of material fact that the plaintiff had the absolute right to foreclose on a defaulted mortgage that was in arrears up to $7.5 million? If, as your question sort of assumes as one of the predicate steps, that there has been satisfactory evidence that there was a fixed allonge. My question is, does Illinois law under the Mortgage Foreclosure Act require anything other than the presentment of the mortgage and the assignment and any allonge? Does it require anything other than that, our Mortgage Foreclosure Act? Well, first, the presentment of those items only creates a prima facie case that can be rebutted, and that's noted in the costuming case. How did you rebut it? By putting in evidence that it wasn't a fixed. And there's no dispute, right, that it's not a fixed in the traditional case law of being firmly a fixed. There's no dispute that it's not stapled, it's not part of it, and moreover, it doesn't say, it says this is to be attached. When this affidavit was filed, was the lawyer referring to the UCC code that we've adopted or that other states have adopted? Ours. So when he said that, he meant it wasn't a fixed how? I don't believe he was trying to invoke a statutory term there. I think he was trying to sort of cover the basis of ways in which things are a fixed. Is that a conclusion or not? I don't think so. No? Because you're saying a negative, right? What does the code allow? The code only requires a fixed. Okay. And he's trying to prove a negative, right? So he can't, I suppose he could have said there was no staple, there was no paper clip, there was no brass tack through it, et cetera, et cetera. But I don't know how he could draw that one possible conclusion is he viewed something as attached. Did Calder say it was attached? He says it was paper clipped. He did say that. And he's not a lawyer, is he? No. And his affidavit would actually comply with 191, wouldn't it? I think we have challenges to the foundational aspects of his affidavit with respect to other issues like loan accounting and stuff like that. On that issue, fine. But I don't, I agree that, but Mr. Barnes' affidavit also complies. Yeah, well, I mean, you do have a problem, you know, with 191. I agree with 191 to the extent this was an affidavit related to seeking discovery, but it's not sufficient for a lawyer to come in and say, here's the discovery I, as a lawyer, think we need and have to get, et cetera, et cetera. That's to raise a question of material fact for purposes of summary judgment? I think it can be when it's an issue about which the lawyer was the witness. I mean, they could have brought a motion to disqualify him, maybe he couldn't testify or something, but he was the person present in the office and saw this. So if, for example. . . Calder said it was paper clipped. And Barnes said it wasn't. Right. And if there was an issue, say, again, I'll go back to the issue of, was the law history ever produced with plaintiff's document production? And that's an issue of fact at summary judgment. It can't be the case that the lawyer who went through the documents and reviewed them. . . Yeah, the numbers are not really before us. No, I was using an example to say, if there was an omission, say, from plaintiff's document production, and there was a question at summary judgment, Judge, they can't rely on this because it was never produced to us. Could the court take an affidavit from the lawyer saying, I'm the one who went to that office, reviewed those documents, and that document, Judge, wasn't among the documents they ever produced to us? I think a judge would accept that affidavit. And it's no different than this affidavit saying, there's a question about the condition, the physical condition of these original documents. I, the lawyer, went and looked at the condition of these physical, these original documents, and this is what I observed. Thank you. Thank you, both attorneys. It's a very well-argued case. We appreciate all of your good work. We will take this matter under advisement and stand in a brief recess.